UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANITA AUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01839-SRC |
| | ) | |
| MIDTOWN HOME | ) | |
| IMPROVEMENTS, INC. et al, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Memorandum and Order</u>**

Anita Austin sues ZuntaFi Corp for its alleged involvement with a fraudulent loan

scheme connected to her purchase of a fence.  ZuntaFi moves for partial dismissal of Austin's

complaint, arguing that Austin fails to state a claim against it under the Missouri Merchandising

Practices Act, and that Austin improperly styles her request for equitable relief as a standalone

cause of action.  For the reasons stated below, the Court grants ZuntaFi's motion and grants

Austin leave to amend her complaint.

I.      **Background**

A.      **Factual background**

The Court accepts the following relevant facts as true for purposes of ZuntaFi's motion.

Austin contracted with Midtown Home Improvements in February 2022 to purchase a fence.

Doc. 19 at ¶¶ 29, 32.  On the day Austin contracted with Midtown, she paid $100 toward the

purchase of the fence.  *Id.* at ¶ 32.  The parties agreed that Austin would finance the remainder of

the purchase price.  *See id.* at ¶¶ 30–32.  Midtown represented that it used a financing company

known as Fund Fast for credit applications.  *Id.* at ¶¶ 31, 34.  Austin agreed to general financing

terms, "with the express caveat that there be only one credit inquiry," as Austin "didn't want

multiple [credit] denials on her reports." *Id.* at ¶ 33. Austin did not fill out a credit application herself. *Id.* at ¶ 35.

In March 2022, Austin received a credit-denial letter from GreenSky, a lender that had pulled her credit score on February 12, 2022. *Id.* at ¶ 36. Austin also discovered that another lender or intermediary—FinMkt, Inc.—had pulled her credit report the same day GreenSky did. *Id.* at ¶ 37. But she did not receive a credit-denial letter related to the FinMkt inquiry. *Id.* at ¶ 72. Because Austin told Midtown that "she would only tolerate one credit pull," she believed Midtown lacked a "permissible purpose" in submitting the second inquiry. *Id.* at ¶ 38.

After receiving the credit-denial letter from GreenSky, Austin believed that "she could not afford the fence." *Id.* at ¶ 39. So she contacted Midtown, seeking to cancel her contract; Midtown informed her that it was too late to cancel. *Id.* at ¶¶ 39–41. Midtown, seeking "to salvage the deal," sent another salesperson to Austin's home. *Id.* at ¶ 42. This salesperson told Austin that he could "obtain financing with a monthly payment of $168" so that the fence would be "facially affordable" for her. *Id.* at ¶ 43. The parties memorialized these terms in a new contract. *Id.* at ¶ 44. Austin, again, had not "signed, reviewed, or even seen a credit application or loan agreement." *Id.* at ¶ 47.

In March 2022, Midtown finished installing the fence in Austin's yard, and Austin signed a certificate of completion. *Id.* at ¶ 46. That same day, Midtown provided Austin with a lien-waiver form, which acknowledged Midtown's receipt of $13,595 (presumably from a third party) and released any lien Midtown might place on Austin's home. *Id.* at ¶ 45. Austin never received "any paperwork related to the fence, such as an invoice from [Midtown]." *Id.* at ¶ 47.

In April 2022, Austin began receiving text messages from an unknown lender or servicer. *Id.* at ¶ 48. These texts showed that Austin owed a balance of $15,499, with an amortization

2

schedule that would require her to pay $225.97 per month for 120 months.  *Id.* at ¶ 48.  Austin

contacted Midtown shortly thereafter, "stating that she'd not agreed to such a contract."  *Id.* at

¶ 49.  Midtown responded that Fund Fast sent Austin a link reducing the financed amount she'd

have to pay.  *Id.*  Austin "continued to not receive any billing statements related to the fence."

*Id.* at ¶ 50.

In August 2022, Austin contacted Midtown again, stating that she had still not received a

bill from Midtown but did receive a delinquency notice from ZuntaFi, which had reported her

delinquency to credit bureaus.  *Id.* at ¶ 51.  Midtown responded that Fund Fast was the third-

party lender, that bills would not come from Midtown directly, and that this information was in

Austin's email.  *Id.* at ¶ 52.  Austin replied that she had not received an email from anyone.  *Id.*

According to Austin, she had not received any emails because Midtown had entered her

email address incorrectly in the credit application and loan agreement it completed and signed on

her behalf.  *Id.* at ¶ 54.  Midtown also inflated Austin's income in the application, stated that her

monthly mortgage payment was $0, and listed her birth date as the date it signed the

agreement—purportedly to secure loan approval.  *Id.* at ¶¶ 55–56.  The terms of the loan

agreement showed a 180-month repayment schedule with monthly payments of $170.66—a total

payment of $30,718.80.  *Id.* at ¶¶ 63–64, 67.  The creditor for this loan "was disclosed as being

the Bank, care of ZuntaFi."  *Id.* at ¶ 65.

Austin alleges that Midtown had "received financing from ZuntaFi at some point, or

points, in time" without her knowledge.  *Id.* at ¶ 74.  She further alleges that, "[d]espite the

plainly fraudulent application, ZuntaFi funded a loan in [her] name and reported it to the

consumer-reporting agencies."  *Id.* at ¶ 77; *see also id.* at ¶ 82.  ZuntaFi also claimed that Austin

3

was delinquent on her payments and reported the full debt and late payments to credit bureaus until February 2026.  *Id.* at ¶¶ 86, 88.

### B.   Procedural background

Austin sued Midtown and ZuntaFi in December 2025, asserting claims under the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and Missouri state law.  *See* doc. 1 at ¶¶ 108–92.  ZuntaFi and Midtown each filed a motion to dismiss Austin's initial complaint. *See* docs. 15, 17.  But Austin filed an amended complaint shortly thereafter, doc. 19, so the Court denied Defendants' motions as moot, doc. 37.

As relevant here, Austin sues ZuntaFi under the Missouri Merchandising Practices Act (MMPA).  Doc. 19 at ¶¶ 131–44.  She also brings an unnumbered, standalone claim against ZuntaFi for declaratory and injunctive relief.  *Id.* at ¶¶ 235–44.  ZuntaFi moves to dismiss these counts.  Doc. 25.  The parties have fully briefed this motion, docs. 41, 44, so it's ripe for the Court's review.

## II.   Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice-pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d

505, 512 (8th Cir. 2018) (citation omitted).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).  Ordinarily, a court considers only the facts alleged in the complaint when examining a motion to dismiss; however, a court may also consider materials attached to the complaint in construing its sufficiency.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  But if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

## III.    Discussion

### A.    MMPA claim

Austin sues ZuntaFi under the MMPA.  Doc. 19 at ¶¶ 131–44.  The MMPA gives consumers a private right of action to recover damages from sellers:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action . . . to recover actual damages.

Mo. Rev. Stat. § 407.025.1(1).  In turn, section 407.020 of the MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material

5

fact in connection with the sale or advertisement of any merchandise in trade or commerce."

Mo. Rev. Stat. § 407.020.1.  Such unlawful practices violate the MMPA "whether committed

before, during[,] or after the sale," so long as they are done "in connection with the sale."

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) (citation modified).  And for an

action to be "in connection with" the sale, "a relationship between the sale of merchandise and

the alleged unlawful action" must exist.  *Id.*

In sum, to state a claim under the MMPA, Austin must show that she "(1) purchased

merchandise . . . (2) for personal, family or household purposes; and (3) suffered an ascertainable

loss of money or property; (4) as a result of an act declared unlawful under [section 407.020]."

*Tucker v. Gen. Motors LLC*, 58 F.4th 392, 396–97 (8th Cir. 2023) (quoting *Vitello v. Natrol,*

*LLC*, 50 F.4th 689, 693 (8th Cir. 2022)).

But that's not all.  The Missouri Legislature amended the MMPA in 2020, altering

MMPA claims in two substantial ways.  First, the legislature placed more stringent requirements

on plaintiffs:

> A person seeking to recover damages shall establish:
>
> (a) That the person acted as a reasonable consumer would in light of all circumstances;
>
> (b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and
>
> (c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

Mo. Rev. Stat. § 407.025.1; *see also Bell v. Annie's, Inc.*, 673 F. Supp. 3d 993, 998 (E.D. Mo.

2023) (requiring plaintiff to establish the three added elements from the 2020 amendments);

*Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 947 (E.D. Mo. 2023) ("[T]he Court holds that

§ 407.025.1(2) adds three elements to the original four set by the pre-amendment MMPA.");

6

*Dedloff v. Whole Foods Mkt. Grp., Inc.*, 688 F. Supp. 3d 893, 901 (E.D. Mo. 2023) ("The 2020 amendments to § 407.025.1(2) added three elements . . . ."). Second, the legislature empowered courts to dismiss as a matter of law cases that previously may have made it past the motion-to-dismiss stage: "A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer." Mo. Rev. Stat. § 407.025.1(2).

ZuntaFi argues that Austin's MMPA claim fails because Austin cannot plausibly allege "that ZuntaFi's alleged MMPA violations would have caused a reasonable person to purchase the fence." Doc. 25 at 4. This is because Austin decided to purchase the fence "*before* ZuntaFi became involved in the servicing of the supposedly fraudulent loan." *Id.*

Austin counters that, because her transaction with Midtown "always contemplated the possibility of financing from some source," ZuntaFi's providing financing, approving a fraudulent credit application, and transferring funds in Austin's name were "in connection with" the transaction. Doc. 41 at 6–11. ZuntaFi responds that Austin conflates her decision to purchase the fence with Midtown's representation that they would go to a "second-look financier" like ZuntaFi after Austin tried (and failed) to repudiate the purchase. Doc. 44 at 2. And because Austin never contemplated the involvement of a second-look financier when deciding to purchase the fence, it argues, she does not plausibly plead that ZuntaFi's conduct induced her to enter the transaction. *Id.* at 3–4.

The Court notes that Midtown's sale of the fence constitutes the sale of "merchandise" under section 407.020. *See* Mo. Rev. Stat. § 407.020.1; Mo. Rev. Stat. § 407.010(4) (defining "merchandise" as including objects, goods, and services). And because Midtown sold the fence to Austin on credit, to be paid off over time, ZuntaFi's furnishing and facilitating the loan for the

fence occurred "during" the sale. *See Conway*, 438 S.W.3d at 414; *Jackson v. Barton*, 548 S.W.3d 263, 270 (Mo. 2018) (noting that "a sale is not completed until payment is received for the services rendered"). Further, because Austin required financing to purchase the fence, ZuntaFi's actions were necessary to the sale, meaning that ZuntaFi acted "in connection with" the sale. *Conway*, 438 S.W.3d at 414. Finally, Austin alleges that ZuntaFi engaged in fraudulent, deceptive, or unfair conduct by "making use of the obviously fraudulent credit application to initiate the approval and funding of the fraudulent $13,495 loan." Doc. 19 at ¶¶ 133–34. Austin therefore plausibly alleges that ZuntaFi engaged in unlawful conduct in violation of Mo. Rev. Stat. 407.020.1.

But this does not end the inquiry; Austin must still clear the hurdle of the 2020 amendments. *See* Mo. Rev. Stat. § 407.025.1(2). She fails to do so. While Austin argues that she and Midtown contemplated the need for financing from the beginning, doc. 41 at 7, 11, she also instructed Midtown that she wanted only one "hard pull" of her credit, doc. 19 at ¶ 33. And once the first-look financier, GreenSky, denied her application, Austin attempted to revoke the transaction with Midtown. *Id.* at ¶¶ 36–41. She then alleged that ZuntaFi became involved in the transaction after this point—i.e., as a second-look financier, which she did not contemplate upon entering the transaction. *See id.* at ¶¶ 70–88. Thus, Austin cannot show that ZuntaFi's involvement—which she did not foresee or consent to—caused her to enter the transaction at issue (i.e., the purchase of the fence).

In other words, Austin does not plausibly allege that *any* person, let alone a reasonable one, would have relied on ZuntaFi's actions in deciding to purchase the fence. So while Austin may have a cause of action against ZuntaFi in other respects, she cannot plausibly state a claim

8

against ZuntaFi under the MMPA, as modified by the 2020 amendments.  The Court grants ZuntaFi's motion to dismiss on this ground.  Doc. 25 at 3.

### B.      Declaratory and injunctive relief

Austin also brings a standalone claim for declaratory and injunctive relief against ZuntaFi.  *See* doc. 19 at ¶¶ 235–44.  She seeks a declaration that the loan at issue was "void from inception," *id.* at ¶ 244, and a permanent injunction directing ZuntaFi to (1) request that each credit-reporting agency delete the information it possesses regarding the loan, and (2) provide to Austin's counsel within 14 days an affidavit attesting to such performance, *id.* at ¶ 242.

ZuntaFi argues that the Court should dismiss Austin's request for declaratory relief because she "already has an adequate remedy at law."  Doc. 25 at 5–6.  And it asks the Court to dismiss Austin's request for injunctive relief, as "injunctive relief is not a cause of action," and "there is no underlying theory upon which it can be based."  *Id.* at 6.  Austin retorts that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), allows her "to request a declaratory judgment via a standalone petition or along with other causes of action."  Doc. 41 at 14.  She also asserts that she properly pleaded a legal theory for injunctive relief by incorporating the prior paragraphs of her complaint by reference into her final claim.  *Id.* at 16.  ZuntaFi replies that the Court should nonetheless decline to exercise its discretion to provide declaratory relief.  Doc. 44 at 4. And it argues that, if Austin wishes to seek injunctive relief, "she should do so properly by bringing it as a prayer for relief under one of her other counts."  *Id.* at 5.

The Court agrees with ZuntaFi.  Injunctive and declaratory relief are remedies, not causes of action.  *See Allied Servs., Inc. v. Smash My Trash, LLC*, 153 F.4th 600, 610 (8th Cir. 2025) ("A claim for declaratory judgment is not a separate cause of action but a remedy for a viable underlying cause of action."); *Farmers Ins. Exch. v. Jasper*, No. 4:23-cv-00406-SRC, 2023 WL

7181661, at *2 (E.D. Mo. Nov. 1, 2023) (noting that a cause of action for injunctive relief does not exist in federal or Missouri state court); *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. 2011), *abrogated on other grounds by Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778 (Mo. 2023) ("[A]n injunction is a remedy and not a cause of action . . . ."); *see also Guardians Ass'n v. Civ. Serv. Comm'n of N.Y.C.*, 463 U.S. 582, 595 (1983) ("Whether a litigant has a cause of action 'is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive.'" (citation omitted)).

Here, Austin "incorporates by reference and reasserts . . . all foregoing paragraphs" in her equitable relief section. Doc. 19 at ¶ 235. And although she asserts numerous claims against ZuntaFi throughout her complaint, *see id.* at ¶¶ 145–55, 169–95, 221–34, she does not identify *which* legal theory supports her claim for equitable relief. The Court therefore treats the equitable-relief section of Austin's complaint as attempting to assert a standalone cause of action for injunctive and declaratory relief and grants ZuntaFi's motion to dismiss on this ground. Doc. 25 at 5. The Court will, however, allow Austin to amend her complaint to reassert her request for equitable relief consistent with the Court's order. Austin must file her amended complaint no later than August 11, 2026.

## IV.    Conclusion

Accordingly, the Court grants ZuntaFi's [25] motion to dismiss. The Court also grants Austin leave to amend her complaint consistent with the Court's order. Austin must file any amended complaint no later than August 11, 2026.

So ordered this 28th day of July 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

10